The STATE of Texas, Appellant,

v.

YOUNG'S MARKET COMPANY et al., Appellees.

No. 3826.

Court of Civil Appeals of Texas.

Eastland.

July 12, 1963.

Rehearing Denied Aug. 2, 1963.

Frank Ginzel, County Atty., Colorado City, Norman V. Suarez, Asst. Atty. Gen., Austin, for appellant.

Nunn & Griggs, Sweetwater, Michael McCloud, Jr., Dallas, for appellees.

COLLINGS, Justice.

This is a forfeiture suit brought by the State of Texas against a 1960 International truck tractor and 950 cases of whiskey under the provisions of the Texas Liquor

Control Act, Article 666–1 et seq., Vernon's Texas Penal Code. Young's Market Company, alleging that it was owner of the whiskey, and South West Shippers, Inc., alleging that it was owner of the vehicles seized, intervened seeking the return of such vehicles and merchandise. International Harvester Company and International Harvester Credit Corporation also intervened claiming a valid lien on the truck tractor involved. Trial was before the court without a jury and judgment was rendered for the intervenors and against the State of Texas. The State has appealed.

The facts as alleged in appellant's brief are undisputed and additional undisputed facts are shown in the record. Such facts are in substance as follows: On May 1, 1962, a patrolman of the license and weight section of the Texas Department of Public Safety stopped the vehicle involved on U. S. Highway 80 in Mitchell County for a routine investigation. The patrolman, as a result of his investigation, took the driver in custody and filed a complaint against him for violating a provision of the Texas statutes not material hereto and the driver entered a plea of guilty and paid a fine. When the patrolman first stopped the truck the driver told him that the cargo was "red wood furniture". After the driver had paid his fine and the truck was returned to him the patrolman asked the driver for a bill of lading, or manifest, showing the origin and destination of the cargo. The driver failed to produce a bill of lading or any writing giving the required information. Thereupon the patrolman, having acquired permission to inspect the cargo, proceeded to break the seal on the door of the trailer and make an inspection. It was found that the cargo was the 950 cases of whiskey here involved. The patrolman then called the Texas Liquor Control Board and retained in custody the driver, truck and cargo until the Board supervisor for that area arrived. The supervisor also requested the driver to produce a manifest showing the consignor, consignee, and the origin and destination

of the whiskey but the driver did not then or at any other time produce a manifest or bill of lading. The supervisor ordered the truck and its cargo seized and impounded. The drivers of the truck were arrested for violating the Texas Liquor Control Act and eventually entered pleas of guilty, served a jail sentence and paid fines for violation of Article 666–27, Vernon's Texas Penal Code.

The court found, as shown by the evidence, that when the truck was stopped the driver or person accompanying and in charge of the shipment failed to exhibit a written statement furnished and signed by the shipper showing the name and address of the consignor and the consignee, the origin and destination of the shipment, after proper demand for exhibition of same was made by a peace officer acting in the course of his duty.

It is urged in points presented by appellant that the court erred in granting judgment against the State and ordering the return of the confiscated whiskey to the intervenors, erred in failing to find that the 950 cases of whiskey confiscated was illicit beverage as defined by the Texas Liquor Control Act, erred in ordering the return of the confiscated whiskey because the evidence shows and the court found that the person accompanying the shipment failed to exhibit a written statement furnished by the shipper showing the name and address of the consignor and consignee, and the origin and destination of the shipment, as required by Article 666–27, V.T.P.C., and erred in concluding that failure of the drivers of South West Shippers, Inc., to produce and display the written statement required by Article 666–27(a), constituted a mere technical violation, and that such failure to produce and display the written statement was not such a violation of the Texas Liquor Control Act as to constitute the cargo "illicit beverage" and that nothing in the nature of the cargo itself or its use violated any provision of the laws of this state.

Article 666–27, V.T.P.C., provides:

"(a) It shall be unlawful for any person to transport into this State or upon any public highway, street, or alley, in this State any liquor unless the person accompanying or in charge of such shipment shall have present and available for exhibition and inspection, a written statement furnished and signed by the shipper, showing the name and address of the consignor and the consignee, the origin and destination of such shipment, and such other information as may be required by rule and regulation of the Board. It shall be the duty of the person in charge of such shipment while the same is being transported, to exhibit such written statement to the Board or any of its authorized representatives or to any peace officer making demand therefor, and it shall be unlawful for any person to fail or refuse to exhibit the same upon such demand. Such written statement shall be accepted by such representative or officer as prima facie evidence of the lawful right to transport such liquor.

"(b) * * * Any alcoholic beverage so unlawfully transported or imported into this State is hereby declared to be an illicit beverage."

Article 666–3a(4), V.T.P.C. provides:

" 'Illicit Beverage' shall mean and refer to any alcoholic beverage manufactured, distributed * * * or transported in violation of this Act * *."

Article 666–4, V.T.P.C., further provides:

" * * * It is further expressly provided that any rights or privileges granted by the provisions of this Section, as exceptions to the prohibited acts and other sections shall be enjoyed and exercised only in the manner as provided. Any act done by any person which is not granted in this Act is hereby declared to be unlawful."

Article 666–4(a), V.T.P.C., provides.

"It shall be unlawful for any person to * * * transport * * * any liquor in any wet area without first having procured a permit of the class required for such privilege."

Article 666–4(b), V.T.P.C.:

"It shall be unlawful for any person in any dry area to * * * transport * * *. whiskey * * *."

Article 666–42, V.T.P.C., provides:

"(a) All illicit beverages as defined by this Act together with the containers and any device in which the beverage is packaged, and any wagon, buggy, automobile, water or aircraft, or any other vehicle, used for the transportation of any illicit beverage * * * may be seized with or without a warrant by an agent or employee of the Texas Liquor Control Board, or by any peace officer, and any person found in possession or in charge thereof may be arrested without a warrant. * * *

"(b) It shall be the duty of the Attorney General, the District Attorney, and the County Attorney, or any of them, when notified by the officer making the seizure, or by the Texas Liquor Control Board, that such seizure has been made, to institute a suit for forfeiture of such alcoholic beverage and property * * *."

It is the State's contention that the whiskey is "illicit beverage" and as such is subject to forfeiture under the above provisions of the Texas Liquor Control Act; that the whiskey was transported contrary to the provisions of Article 666–27, in that, the driver accompanying the cargo failed to exhibit on demand a written statement furnished by the shipper showing the name and address of the consignor and the consignee, and the origin and destination of the shipment; that the whiskey therefore was and is by the terms of the statute "illicit

beverage" and that such liquor and the motor vehicle and trailer used in the transportation thereof are under Article 666–42 subject to forfeiture.

Article 666–42 does provide for the forfeiture of "all illicit beverages" and any vehicle used for transportation thereof. Appellees contend, however, that the construction of statutes so as to impose forfeiture is not favored and that forfeiture provisions in statutes will be interpreted so as to prevent rather than to cause forfeiture; that the confiscation of their property under the facts and circumstances shown would deprive them of their property without due course and process of law in violation of the constitutions of the State of Texas and of the United States. Appellee Young's Market Company urges that even if there has been a violation of the Texas Liquor Control Act it is of a technical nature and forfeiture of $44,991.00 worth of legitimate personal property belonging to an innocent stranger to the violation can have no beneficial effect in carrying out the purpose of and promoting the enforcement of the laws of this State. In this connection it is stated in 37 C.J.S. Forfeitures § 4 at page 8, as follows:

"Forfeitures are not favored; they are considered harsh exactions, odious, and to be avoided when possible. * * * a statute imposing a forfeiture should be construed strictly and in a manner as favorable to the person whose property is to be seized as is consistent with the fair principles of interpretation. The courts will usually give such a construction to statutes providing for forfeitures as will be consistent with justice and the dictates of natural reason, although contrary to the strict letter of the law; * * * Statutes must not be construed to forfeit an owner's property, unless from the statutes itself, in the light of the object and existing conditions, it is manifest that the legislature so intended; and statutes shall not be held to forfeit property except for the fault of the owner or his agents,

unless such a construction is unavoidable."

In support of its contention that the power of the State to confiscate under the facts and circumstances is a valid exercise of police power and not in violation of any constitutional provision, appellant relies upon State v. Richards, 157 Tex. 166, 301 S.W.2d 597. In that case Richards was the owner of an automobile and loaned it to a friend who, while operating the vehicle, was arrested and found to be in possession of unlawful narcotics. Richards had no knowledge that his friend possessed the narcotics or had ever been a user of narcotics, and the transportation of the narcotics was without his consent or knowledge. The forfeiture of Richards' automobile was allowed under the provisions of Article 725d of the Texas Penal Code. In passing upon the question of the constitutionality of a statute providing for forfeiture of the property of an innocent owner of a vehicle used in violation of Article 725d, supra, our Supreme Court held that the guarantee of due process will not interfere with a State's exercise of its police powers. However, the court specifically limited the extent of the holding with the following language:

"It is essential that the (police) power be used for the purpose of accomplishing, and in a manner appropriate to the accomplishment of, the purposes for which it exists."

In the instant case it is undisputed that the driver of the International truck tractor transporting the whiskey involved failed to produce a bill of lading or any writing showing the information required by the provisions of Article 666–27, supra. It is also undisputed that Young's Market Company was the lawful owner of such whiskey at all times material hereto and has paid the purchase price to Brown-Forman Distillers Corporation in the sum of $44,991.00. Young's Market Company, the consignee, was lawfully engaged in the wholesale liquor business in the State of California.

and held necessary federal and California licenses and permits. Brown-Forman Distillers Corporation, the shipper, was lawfully engaged in manufacturing and distributing alcoholic liquors in the State of Kentucky and held necessary federal and local permits and licenses to engage in such business. The 950 cases of whiskey sold by Brown-Forman Distillers Corporation to Young's Market Company was not destined for use or sale in the State of Texas, but was delivered to the common carrier in Kentucky for shipment to the consignee, Young's Market Company, at San Diego, California. Young's Market Company had designated appellee, South West Shippers, Inc., as the common carrier but had no ownership or control over such carrier nor did it have any control over the operation of the transporting vehicle or the actions of the drivers thereof, or of the route to be selected in transporting the cargo. Young's Market Company had no knowledge of the fact that the cargo was to be transported through the State of Texas. It had no knowledge that the laws of this state would be violated in the course of such transportation. The evidence is undisputed that when the cargo left Brown-Forman Distillers Corporation in Louisville, Kentucky, the person accompanying the cargo had in his possession a written statement furnished and signed by Brown-Forman Distillers Corporation showing the names and addresses of the consignor, the consignee, and the origin, destination and description of the shipment. The evidence does not show any reason for the conduct on the part of South West Shippers' employee in failing to exhibit such written statement when requested to do so. It is undisputed that after the seizure of the vehicle and cargo the Texas Liquor Control Board on May 4, 1962, made written demand on Young's Market Company for production of a purchase order and invoice covering the cargo and on May 7, 1962, Young's Market Company produced and exhibited the information requested, including a written statement furnished and signed by the shipper showing the name and address of the consignor and consignee, the origin and destination of the shipment, and all other information required by the Board. No fault is shown on the part of Young's Market Company or of any agent of such company.

We agree with the contention of appellee Young's Market Company that the violation involved is a technical one and that under the circumstances it should not be deprived of its 950 cases of whiskey by confiscation. State v. Shapiro, Tex.Civ.App., 273 S.W.2d 93. Young's Market Company was the lawful owner of the whiskey. Although it had designated the common carrier, it owned no interest in such carrier and had no control over the details of the manner of transportation. The delivery of the cargo to the carrier was in full compliance with the law and it was bound for a lawful destination. The cargo was properly halted and seized by the officers of the State of Texas because of the violation of the law on the part of the driver of the carrier's vehicle. But Young's Market Company had no control over the transportation, and no complicity in or knowledge of the law violation. Upon receipt of notification from the Texas Liquor Control Board that the driver of the carrier's vehicle had failed to produce a bill of lading or other writing required by Article 666–27, supra, Young's Market Company immediately sent to the Board a bill of lading covering the cargo, containing all the information required by the statute. Although a violation has been shown on the part of the driver of the vehicle of the common carrier, in our opinion it is not comtemplated by the Texas Liquor Control Act that under these circumstances a lawful and innocent owner of property should be deprived of the value thereof by confiscation. The record shows no law violation or fault on the part of Young's Market Company, the lawful owner of the property, and no complicity in the dereliction of the truck driver. Although the facts of this case and the Shapiro case are not identical they are alike in that the

**664**

only law violation was a technical one and the owner of the property was guilty of no wrong.

The Richards case, supra, is distinguished from the instant case in that in the Richards case the narcotics were contraband ab initio. The narcotics were found in the possession of the driver of the automobile and were unquestionably illicit. There was no contention that its possession or transportation was in any sense or at any time lawful. The only defense of Richards, the owner of the automobile, was that the transportation of the narcotics was without his knowledge or consent.

In the instant case the cargo was not contraband. The transportation of the liquor was lawful from its inception and the only violation shown was on the part of a truck driver who was the employee of a common carrier, over whom the owner of the cargo had no control. It is true that in these circumstances the cargo was properly halted and seized by the officers under the provisions of Article 666–27–42. The violation of the truck driver of the common carrier constituted the cargo "illicit beverage" subject to be seized as such. However, it is our opinion that the following language by the Texas Court of Criminal Appeals in Gordon v. State, 166 Tex.Cr.R. 24, 310 S.W.2d 328, indicates the proper and controlling consideration:

> "Unless and until that tax was paid, the rum was an illicit beverage, and contraband subject to be seized as such."

The possession and transportation of the cargo here involved was lawful until the violation by the truck driver of the common carrier. When the lawful owner, Young's Market Company, immediately upon notification by the Texas Liquor Control Board of the violation by the truck driver, furnished the Board all information required by the Texas Liquor Control Act, fully complying with the provisions thereof and showing its innocence of any complicity in the unexplained violation by the truck driver, the cargo regained its lawful nature.

It and the vehicles were no longer contraband subject to confiscation. The trial court did not err in returning the cargo and the vehicles to their respective owners. Appellant's points are all overruled.

The judgment is affirmed.