

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

June 13, 1995

Honorable Paul Sadler
Chair
Committee on Public Education
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-352

Re: Application to leased paging devices of Education Code section 21.309, requiring forfeiture of paging devices possessed by student on school property or at school activities, and related questions (RQ-702)

Dear Representative Sadler:

You are concerned with the implementation of section 21.309, Education Code, which provides:

> (a) A student in a public school may not possess a paging device while on school property or while attending a school-sponsored or school-related activity on or off school property, [with exceptions for certain firefighting and medical emergency service personnel].

> (b) [School district's written standards of student conduct must include subsection (a) prohibition. Student violating prohibition subject to discipline as provided by district policy].

> (c) *A person who discovers a student in possession of a paging device in violation of this section shall report the violation to the appropriate school administrator, as determined by school policy, who shall order a peace officer or appropriate school employee to confiscate the device, which is forfeited to the school district.*

> (d) In this section, "paging device" means a telecommunications device that emits an audible signal, vibrates, displays a message, or otherwise summons or delivers a communication to the possessor. [Emphasis added.]

You ask:

> Are there any unanswered legal questions surrounding a district's confiscation of a paging device *only leased* by, and not *actually owned* by any given student? Is the business company owning the device entitled at all to its recovery given its innocence in the whole matter? [Emphasis in original.]

We note at the outset that we cannot in an attorney general opinion attempt to anticipate all situations that may arise in the implementation of section 21.039 with regard to leased paging devices. *See generally* Attorney General Opinion JM-1225 (1990) (whether a car telephone is a paging device subject to section 21.309). Moreover, as we have noted before, where a statute is not unconstitutional on its face, we are generally unable in an attorney general opinion to weigh or balance the competing interests involved so as to determine its constitutionality, especially for purposes of all possible applications. Such determinations would be made by a court after affording the parties opportunity to introduce evidence relevant thereto, a procedure we are unable to perform in the opinion process. *See, e.g.,* Attorney General Opinion DM-261 (1993) (constitutionality of provisions for impoundment of vehicle where proof of financial responsibility not shown). We offer the following for your guidance.

*State v. Richards,* 301 S.W.2d 597 (Tex. 1957), dealt with a forfeiture of a vehicle under former V.T.C.S. article 725d. Richards, the owner, had lent the vehicle to another person, a customer at his place of business, on the latter's representation that he needed it "for thirty or forty minutes" to drive to his brother's apartment to change clothes. The borrower of the vehicle was subsequently arrested with narcotics, that is, "two dolophine pills," in his pocket and it was shown that he had had them on his person while driving the vehicle. The statute in question made it unlawful to transport or possess contraband narcotics in a vehicle, and further provided for the seizure and forfeiture to the Department of Public Safety of any vehicle thus used. The supreme court noted that the statute specifically excepted from its operation vehicles used by a common carrier unless the complicity of the owner or person in charge could be shown, vehicles illegally retained or acquired from the proper owner, and also by specific provisions protected the rights of bona fide mortgagees (lien holders). Applying the rule of statutory construction that "[a]n exception . . . makes plain the intent that the statute should apply in all cases not excepted," the court concluded that forfeiture of Richards's vehicle was within the intent of the statute.

With respect to the constitutionality of the forfeiture there, the *Richards* court noted the strong state interest in suppressing traffic in narcotics, including deterring owners of vehicles from, even unwittingly, abetting it.[1] It found that procedural due process requirements were satisfied in the case at hand since the statute specifically required that the owner of the vehicle be given notice and an opportunity for hearing prior to actual forfeiture. Finally, in holding the vehicle forfeit, the court noted that the innocent owner there might retain a cause of action against the borrower of the car for his loss.

United States Supreme Court decisions appear to be in accord with the proposition of *Richards,* that given a sufficient state interest in the punishment and deterrence of the unlawful activity which was the object of the forfeiture statute, the innocence of the

---

[1]"It is reasonable to suppose that owners will be more circumspect in permitting the use of their automobiles by others when the illegal act of the latter may bring about a forfeiture of the property." *State v. Richards,* 301 S.W.2d, 597, 602 (Tex. 1957).

unlawful activity which was the object of the forfeiture statute, the innocence of the property owner, absent specific statutory provision otherwise, is by itself no defense to forfeiture. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974) Annot., 76 L. Ed.2d 852, 854-55 (citing *Calero-Toledo* and other cases). The *Calero-Toledo* opinion, which incidentally, upheld the forfeiture of a yacht of an "innocent" lessor, strongly suggested, however, that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken by the person who used it for unlawful purposes without the owner's "privity or consent," or where the owner was not only unaware of the unlawful use but had "done all that reasonably could be expected to prevent the proscribed use of his property." 416 U.S. at 689; *see also State v. Young's Market Co.*, 369 S.W.2d 659 (Tex. Civ. App.--Eastland 1963, writ ref'd n.r.e.) (although common carrier's failure to show proper documentation for cargo of whisky to patrolman technically made liquor "illicit" and subjected cargo and vehicle to forfeiture under Liquor Control Act, where buyer's and seller's transaction was otherwise legal and they were later able to produce proper documentation, and only unlawful act involved was unexplained dereliction of driver in failing to produce documentation which seller had furnished him, forfeiture was not within contemplation of act).

In response to your question, we note first that we find no exception to forfeiture under section 21.309 where the paging device is leased. Especially as the statute does make other exceptions to its application--the ones in subsection (a) for fire and emergency medical personnel--we conclude, following the *Richards* analysis, that forfeiture of even leased paging devices is within the intent of the statute. Further, we do not believe, based on the authorities cited above, that application of section 21.309 to the paging devices of "innocent" lessors would be per se unconstitutional. Although there may be a variety of constitutional theories under which the statute could be attacked--from due process and equal protection to cruel and unusual punishment--we find no fundamental rights or suspect classifications facially implicated by the provision such as to render it unconstitutional on its face. Notably, the bill analysis to section 21.309 asserted significant state interests in the matter: that the presence of paging devices in the educational setting was both generally disruptive and in particular facilitated trafficking in illegal drugs. Subsection (b) of the section, in providing for the implementation of the prohibition on paging devices through the school district's written standards of student conduct, allows for the inclusion in such standards or procedures for giving notice and the opportunity for hearing to the student from whom a paging device is confiscated. Where a lessor is also involved, notice and opportunity for hearing should, we believe, also be provided, sufficient to afford procedural due process. *See, e.g., Richards*, 301 S.W.2d 597 *see also* Annot., 76 L. Ed.2d at 855-57 (citing cases). Although the statute does not specifically provide for such notice and hearing, we do not believe that deficiency is such as to render it unconstitutional on its face. Rather, such due process requirements should be read into statutes by implication to as to sustain their constitutionality so long as the statutes do not specifically and affirmatively provide for procedures violative of due process. *See, e.g., House of Tobacco v. Calvert*, 394 S.W.2d 654 (Tex. 1965) (notice and hearing requirements necessary to comport with due process should be read into statute

providing for forfeiture of cigarette permits rather than striking down statute where it lacks express provisions to such effect).

We acknowledge, however, that fact situations may arise where, a court after hearing the evidence and arguments of the parties, could find that particular forfeitures exceeded constitutional limits. For example, a lease contract's specifically forbidding the lessee's possessing or permitting possession of the leased device on property or at activities within the section 21.309 prohibition might weigh in favor of the lessor's opposition to forfeiture, particularly where there were other exonerating factors. *See Calero-Toledo*, 416 U.S. 663; *see also, e.g., Austin v. United States*, 113 S. Ct. 2801 (1993) (application of Eighth Amendment protection against excessive punishment to civil forfeiture).

You also ask:

> What precisely is a public school district allowed/re-quired/advised to do with any or all paging devices confiscated under Section 21.309 . . . ? The section itself makes no provision and Article 3, Section 52 of the State Constitution and, perhaps, Section 23.30 of the [Education] [C]ode clearly complicate any district action subsequent to the confiscation. Would it be legally acceptable for the district to: (a) after issuing an appropriate and standard public notice, sell the devices to the highest bidder; or (b) dispose of them as if the devices were ordinary garbage; or (c) simply do nothing and keep them locked away forever?

We note first that we think it clear under the terms of section 21.309 that the devices, once forfeited to the district become the property of the district. We do not believe that section 23.30 of the Education Code, referenced in your question, is relevant to the disposition of confiscated paging devices. Although subsection (a) facially provides for the disposition by school districts of "any property, other than minerals, held in trust for free school purposes," reading the section as a whole, we think its scope is limited to real property. Subsection (b) provides with respect to sales under the section that "the president of the board of trustees shall execute his deed to the purchaser[s]." Subsection (d) provides that sales of "school houses, buildings or lands" made in substantial compliance with the section and authorized by the board of trustees shall not be invalid for any lack of authority to make them. Moreover, former V.T.C.S. article 2773, the predecessor provision of section 23.30, which was codified in the 1969 adoption of the Education Code, specified that the school district sales addressed by those provisions were ones of "houses or lands." *See* V.T.C.S. art. 2773; § 1 (repealed by Act of May 31, 1969, 61st Leg., R.S., ch. 889, § 2, 1969 Tex. Gen. Laws 2735, 3024; *see also id.* § 23.30, at 2955). We find nothing in the legislative history of the 1969 codification

indicating an intent to extend the ambit of those provisions to include personal property.[2] We believe, however, that the school district has the implied authority to use and dispose of the property as it sees fit. *See* Educ. Code § 23.26 (board's authority to manage district).

Of course, the school district's authority to use and dispose of the devices is subject to the article III, section 52 restrictions. Article III, section 52 prohibits political subdivisions, such as school districts, from "granting" "anything of value" "to any individual, association or corporation whatsoever." *See, e.g.,* Attorney General Opinion MW-36 (1979). Of the alternatives for disposition of forfeited paging devices you suggest, selling such devices to the highest bidder, would appear to be an effective means for the district to obtain a reasonable quid pro quo for such devices and thus not run afoul of article III, section 52. *See, e.g.,* Attorney General Opinion MW-373 (1981). Other methods of sale, so long as they were reasonably calculated to obtain an adequate quid pro quo, might also suffice.[3] If the district is unable to sell the paging devices, we believe the board of trustees should determine other appropriate ways of disposing of them as it does with other school personnel no longer wanted or needed by the district. *See also, e.g.,* Attorney General Opinion MW-93 (1979) (board's discretion to determine whether to seek reimbursement for payments made for certain travel expenses, based on costs of collection and other factors) (citing authorities).

---

[2]The bill analysis to House Bill 534, the bill making the 1969 codification of which section 23.30 was a part, states that the intent of the bill was "to make it clear what the law is, not to make any new law." House Comm. on Public Education, Bill Analysis, H.B. 534, 61st Leg. (1969).

[3]While we find no *requirement* that school districts sell such property through bidding, we think that bidding may be used as a means of sale, and would be appropriate in this instance in view of the article III, section 52 restrictions. Again, however, it is the obtaining of an adequate quid pro quo that is required for article III, section 52 purposes, and there might be other sale methods which could achieve that end.

## S U M M A R Y

Application to leased paging devices of the provisions of Education Code section 21.309--requiring the forfeiture to a school district of paging devices possessed by a student on school property or at school activities--would not be per se unconstitutional where notice and opportunity for hearing are given to affected parties. Where the district desires to dispose of forfeited devices, it is advised that, in order to comply with the restrictions of article III, section 52 of the state constitution, it must first attempt to sell them through bidding or other means calculated to obtain a reasonable quid pro quo.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by William Walker
Assistant Attorney General